DETERMINED IN THE

# THIRD DEPARTMENT

AT

# GENERAL TERM,

## January, 1878.

---

ISAAC G. GALE, Respondent, v. THE NEW YORK CEN-
TRAL AND HUDSON RIVER RAILROAD COMPANY,
Appellant.

*Excessive damages — setting aside of verdict because of — Misconduct of juror — waiver of.*

This action was brought to recover damages for injuries sustained by the plaintiff while crossing one of defendant's tracks, and alleged to have been caused by its defective condition. Upon the trial it appeared that, prior to the accident, plaintiff had worked on a farm and could do any work connected therewith; that by the accident his right leg was broken near the hip; that he was confined to his bed from the time of the accident in July to October first; was placed in a special bed and his leg kept extended by proper appliances for eight weeks; that his right leg was one inch and a-half shorter than the other; that he could go over even ground with one crutch; and had mowed on a mowing-machine, raked with a horse-rake, and driven his team on the road somewhat, but was not able to do much farm work; that the injury was permanent and he could never recover therefrom. The jury rendered a verdict in his favor for $14,000. *Held*, that the verdict would not be set aside as excessive.

During the trial, the court having adjourned, one of the jurors, who lived twelve miles from the court-house, asked the plaintiff to let him ride home with him. The plaintiff assented and the juror rode with him about ten miles, in a three-seated sleigh, plaintiff and the driver on the front seat, two other persons on the middle seat and the juror and another person on the back seat. Nothing was said about the trial. Subsequently, and before the testimony had been closed, the defendant's counsel became acquainted with these facts, where-upon plaintiff's counsel offered to allow this juror to be excused, if defendant's

counsel so desired. Defendant's counsel stated he was willing to leave it to the juror's sense of propriety whether he should or should not remain in the jury-box. *Held,* that even if the irregularity would, in any event, have justified the setting aside of the verdict, the acts and statements of the defendant's counsel constituted a waiver thereof.

APPEAL from an order at Special Term denying a motion for a new trial upon a case and exceptions and affidavits.

This action was brought to recover for injuries sustained by the plaintiff, by being thrown off his wagon, loaded with hay, when crossing the defendant's track at Coeymans, Albany county, in consequence of the breaking of his wagon wheel. Such breaking was alleged to have been caused by the negligence of the defendant in not keeping the surface of the ground, and the timbers and planks at the crossing, in good repair. The answer alleged that the crossing was in good repair and that plaintiff's injuries resulted from his own negligence.

The action came on for trial at the Albany Circuit, and resulted in a verdict for the plaintiff of $14,000. The defendant moved for a new trial upon the grounds that the verdict was against evidence, and was excessive in amount; that errors were committed on the trial, and because of newly-discovered evidence, and for misconduct of one of the jury.

*Matthew Hale,* for the appellant. The authorities show beyond question that this verdict ought not to stand. (*McConnell* v. *Hampton,* 12 Johns., 234; *Collins* v. *Albany and Schenectady Railroad Company,* 12 Barb., 492; *Clapp* v. *Hudson River Railroad Company,* 19 id., 461; *Murray* v. *Hudson River Railroad Company,* 47 id., 196; *Tinney* v. *The New Jersey Steamboat Company,* 5 Lans., 507; *Peck* v. *New York Central and Hudson River Railroad Company,* 4 Hun, 236; *Cox* v. *New York Central and Hudson River Railroad Company,* 4 id., 176; *McIntyre* v. *New York Central,* 47 Barb., 515; *Chicago and Rock Island Railroad Company* v. *McKearn,* 40 Ill., 219, 237, 241; *Illinois Central Railroad Company* v. *Welch,* 52 id., 183; *Chicago and Alton Railroad Company* v. *Wilson,* 63 id., 167; *Goodna* v. *Oskosh,* 28 Wis., 300; *Spicer* v. *Chicago and Northwestern Railroad Company,* 29 id., 580; *Patton* v. *Same,* 32 id., 195.)

*E. Countryman*, for the respondent. There was no misconduct of the juror as alleged. The following cases show that where the act or thing said or done is a mere indiscretion or inadvertence, and occurred from motives of civility or kindness, without any intent to influence the juror — and where no injustice has been done — the verdict will not be disturbed : *Hilton* v. *Southworth* (17 Me., 303), *Handley* v. *Cole* (30 id., 9), *Martin* v. *Mitchell* (28 Ga., 382), *Shea* v. *Laurence* (1 Allen, 167), *White* v. *Wood* (8 Cush., 413), *Jones* v. *Vail* (30 N. J. Law Rep., 135), *Eakin* v. *Morris Canal, etc., Co.* (24 N. J. L., 538), *Sexton* v. *Leliearve* (4 Coldw., 11), *Morris* v. *Vivian* (10 Mees. & Wels., 137). It is also distinctly held, in numerous cases, that where the alleged irregularity is brought to the knowledge of the party during the trial, and he proceeds without objection, he thereby consents to abide the result, and he cannot afterwards raise the objection. (*Fessenden* v. *Sager*, 53 Me., 531 ; *State* v. *Daniels*, 44 N. H., 383 ; *Fox* v. *Hazelton* 10 Pick., 275 ; *Hallock* v. *Franklin*, 2 Met., 560 ; *Martin* v. *Tidwell*, 36 Ga., 332.) For so severe an injury, the amount of the verdict cannot be regarded as excessive. (*Sloan* v. *N. Y. C. and H. R. R. Co.*, 1 Hun, 540 ; *Hegeman* v. *Western R. R. Co.*, 16 Barb., 353 ; *Shaw* v. *Boston and Wor. R. R. Co.*, 8 Gray, 46 ; *Ransom* v. *N. Y. and Erie R. R. Co.*, 15 N. Y., 416 ; *Laning* v. *N. Y. C. and H. R. R. Co.*, 49 id., 525 ; *Saunders* v. *London, etc., R. C.*, 98 Eng. Com. Law, 887 ; *Wright* v. *London, etc., R. Co.*, L. R., 10 Q. B., 298 ; L. R., 1 Q. B. Div., 252.) The following cases of a different character, for personal torts, etc., though not strictly in point, are nevertheless illustrative of the large discretion given to juries in the assessment of damages where they are not founded on proof of items or amounts : In *Chambers* v. *Caulfield* (6 East, 245), a case of *crim. con.*, the verdict was £2,000 or $10,000, and sustained. In *Wood* v. *Hurd* (2 Bing. [N. C.], 485 ; 29 Eng. Com. Law), a case of breach of promise, the verdict was £3,500 or $17,500, and sustained. In *Merret* v. *Harvey* (5 Taunton, 442 ; 1 Eng. Com. Law), an action of trespass on lands, no actual damage, the verdict was £500 or $2,500, and sustained. HEATH, J., in his opinion, said he knew of a case where a jury gave £500 ($2,500) damages for merely knocking a man's hat off, and the court refused a new trial. In *Townsend* v. *Hughes* (2 Modern, 150), an action

of slander, the verdict was £4,000 or $20,000, and sustained. In *Fabrigas* v. *Mostyn* (2 W. Black, 929), an action for false imprisonment, the verdict was £3,000 or $15,000, and sustained. In *Leith* v. *Pope* (2 W. Black, 1327), an action for malicious prosecution, the verdict was £10,000 or $50,000, and sustained. In *Scherpf* v. *Szodeczky* (1 Abb., 366), an action for enticing away a man's wife, the verdict was $10,000, and sustained. In *Moran* v. *Dames* (4 Cow., 442), an action for seduction, the verdict was $9,000, and sustained. (See 24 Barb., 629.) In *Fry* v. *Bennett* (9 Abb. 45), action for libel, the first verdict was $10,000 (4 Duer, 247), which was set aside for errors of law, and the second verdict was $6,000, and sustained. In *Rychman* v. *Parkins* (9 Wend., 470), an action of slander, the verdict was $7,000, and was sustained as not excessive. In *Ash* v. *Aston* (Gen. Term, 2d department), an action of assault and battery, a verdict of $25,000 was sustained. In *Duberley* v. *Gunning* (4 Durnf. and East., 651), an action of *crim. con.*, the verdict was £5,000 or $25,000, and was sustained, although Lord KENYON, before whom the case was tried, would have been satisfied with only nominal damages. In *Hewlett* v. *Crutchley* (5 Taunton, 277 ; 1 Eng. Com. Law), an action for malicious prosecution, a verdict for £2,000 or $10,000 was sustained as not excessive.

LEARNED, P. J. :

The first and principal question is whether the verdict should have been set aside as excessive. On this point the counsel for each side has cited numerous cases. But in making comparisons of other cases with the present, we must notice two things : one is that the relative value of money has diminished in recent times ; another is that, generally, in the older parts of the country the relative value of money is less than in the newer. Furthermore it is difficult to make any just comparisons of this kind, unless we have before us all of the facts in each case, and not merely the brief statement of the reported cases.

The plaintiff's right leg was broken near the hip. The leg is an inch and a half shorter than the other. He can go over an even surface with one crutch. He is not able to do much farm work ; but has mowed on a mowing-machine, raked with a horse-rake and has driven his team on the road somewhat. The injury is perma-

nent ; and he can never recover from it. He was confined to his bed from the time of the injury in July to the first of October; was placed in a special bed, and his leg was kept extended by proper appliances for eight weeks. Before the accident he was able to do any thing which he knew how to do about a farm. He had always worked on a farm.

On this point of setting aside verdicts as excessive we may properly follow the rule laid down in *Coleman* v. *Southwick* (9 Johns., 45), which has been so often quoted. And while the amount recovered in this present case may seem large, we cannot say that it is "beyond all measure unreasonable and outrageous and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice or corruption." A great injury was inflicted on the plaintiff ; a permanent deformity produced, and a partial inability to work during the rest of his life. The plaintiff was in court and seen by the jury. The extent of the injury could be understood better by seeing it than it can be by reading the printed case. The plaintiff was, besides this, confined in bed during the healing of the fracture.

I do not think that there is much to be gained from a critical examination of all the cases of alleged excessive damages. It will generally be found that where verdicts have been set aside on this ground there have been some special or peculiar circumstances. For instance, in *Peck* v. *New York Central and Hudson River Railroad Company* (11 S. C. N. Y., 236), the General Term evidently disbelieved the plaintiff's statement of his injuries. In *Cox* v. *New York Central and Hudson River Railroad Company* the verdicts were set aside because there was in fact no harm whatever done to the plaintiff's intestate.

The next point made by the defendant is that the plaintiff should have been nonsuited. The alleged negligence was the wearing away of plank at the crossing. The defendant claims that the weight of the evidence was that the crossing was at least fair and not such as to endanger any prudent traveler. But there was contradictory evidence upon this point ; so that it was proper for the jury.

The defendant further insists that the plaintiff was negligent in driving too fast upon the track, and in using an old wagon with

rotten spokes. But on these points also the evidence was contradictory, both as to the condition of the wagon and as to the rapidity of the plaintiff's driving. And the case seems to have been fairly presented by the learned justice. The jury have decided the matter favorably to the plaintiff.

A motion was made to set aside the verdict for alleged misconduct of a juror. There is no pretense that the juror intended to do any thing wrong. During the trial the court adjourned on Friday; the juror was twelve miles from home; he asked the plaintiff to allow him to ride with him on his way home. The plaintiff consented and the juror rode with plaintiff for about ten miles and then got out of the sleigh. The plaintiff and another person sat on the front seat; the juror sat on the back seat with another person; and two others sat on the middle seat. No conversation whatever in regard to the action was had by any one in the sleigh while the juror was with them. After the trial had been resumed the next week, the fact that the juror had thus ridden with the plaintiff was elicited by the defendant's counsel on a cross-examination of the plaintiff. The plaintiff's counsel, before the case was submitted, offered to allow this juror to be excused, if the defendant's counsel desired it. The defendant's counsel thereupon stated that he was willing to leave it to the juror's sense of propriety, whether he should or should not remain in the jury box. And the court said that the juror had stated the circumstances to the court and that it saw no impropriety in the act of the juror.

From these facts it seems not improbable that the defendant's counsel might have thought that the juror in question, with a desire to show that he had not been improperly influenced, would possibly lean the other way, and would be likely to favor the defendant. If the defendant's counsel had really supposed that the juror had been influenced in favor of the plaintiff, he would probably have accepted the offer to excuse this juror altogether.

The knowledge of this irregularity was brought to the defendant's counsel before the testimony was closed. He made no objection to proceeding with the trial, and did not ask that a juror be withdrawn and the case go over. He must be deemed to have waived the objection. He cannot "take his chance of a favorable verdict, reserving a power to impeach it should it happen to be against

him; a proceeding inconsistent with the plain principles of fair dealing and with the frankness which ought to characterize the whole course of judicial proceedings." (*Fox* v. *Hazelton*, 10 Pick., 275.) When the counsel said that he left it to the juror's sense of propriety whether or not he should sit, he must be supposed to have meant what he said.

It is not intended to imply that even if the irregularity had not been waived by the defendant it would have been ground sufficient for setting aside the verdict. (*Hilton* v. *Southwick*, 17 Maine, 303.)

The motion for a new trial on the ground of newly-discovered evidence was properly denied for the reason given in the opinion of the learned justice. The testimony and the character of the witness are also attacked so severely, as to show that little confidence can be placed in the new evidence which the defendant desires to introduce.

A witness for the plaintiff was asked on cross-examination whether he had applied to Milmine for the position of section master and had testified that he had not. Subsequently Milmine was called and asked by defendant whether Tuttle had applied to him for the position of section master and defendants offered to show that Tuttle had applied to Milmine and been refused. This was excluded and defendant excepted. If this question was asked for the purpose of discrediting Tuttle by showing that he had testified falsely it was inadmissible as touching a collateral matter. The defendant, however, claims that it was material as showing a hostile feeling to defendant. But this refusal by Milmine did not necessarily show any hostile feeling by the witness to the defendant. No question had been put tending to show that the feelings of the witness were hostile to the defendant. And this question to Milmine was put so as to indicate that it was intended to show a contradiction of Tuttle. It may be that evidence of the feelings of a witness towards a party is direct evidence in the case. But when a question is put like the present, the answer to which would show the feelings of the witness only inferentially, if at all, it cannot be an error in the court not to understand that possible inference. It by no means followed that Tuttle was hostile to the defendant, because Milmine had refused his application for a position. If the defendant's counsel thought that hostility might be inferred, he

should, in fairness, have explained this remote bearing of the evidence upon the merits.

Several exceptions to evidence are briefly made by the defendant. The statement by Adams was not objected to until given. No motion to strike it out appears. The conversation with Frayer, the "section boss," was allowed only to show actual notice to the defendant of the condition of the crossing. It was his duty to attend to the repairing. And it was proper to show notice to the defendant's officers that the crossing was out of repair.

Yeomans, a blacksmith, testified to his familiarity with wood, and gave his opinion as to the toughness of one of the wheels of the wagon, judging from its manner of breaking. This was before the accident. There seems to be nothing wrong in the admission of this evidence. The testimony of Stanton as to the manner of his own crossing the track was only a statement of the condition of the crossing which made it necessary to turn out so as to avoid the worn places.

The testimony by Reynolds as to the repairing of the crossing was expressly allowed only to show that the examination made of the crossing and testified to by him, had been made after the crossing had in fact been repaired. It was therefore proper. The same appears to be true of Stanton's testimony on this point.

Before Tuttle gave evidence of his recent measurements of the ascent he testified to the amount of change which had been made on the railroad. This testimony made the recent measurements competent evidence.

From this examination we think that the order denying a new trial should be affirmed and judgment ordered on the verdict with costs.

Present — LEARNED, P. J., BOARDMAN and SAWYER, JJ.

Order denying new trial affirmed, with costs.